UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION



FILED
MAY 08 2013

| | | |
|---|---|---|
| KTM NORTH AMERICA, INC., an Ohio Corporation; KTM-SPORTMOTORCYCLE AG, an Austrian Corporation, | ) ) ) ) ) | CIV. 13-5033-JLV |
| Plaintiffs | ) ) | TEMPORARY RESTRAINING ORDER AND ORDER TO |
| vs. | ) ) ) | SHOW CAUSE ON PLAINTIFFS' MOTION FOR |
| CYCLE HUTT, INC., a North Dakota Corporation; STURGIS CYCLE HUTT, LLC, a South Dakota Limited Liability Company; DIRT PROMOTIONS, LLC, a South Dakota Limited Liability Company; JUSTIN BOHN, an individual; TAMMY BOHN, an individual; and DOES 1-50, inclusive, | ) ) ) ) ) ) ) ) ) ) ) | A PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION |
| Defendants. | ) ) | |

**INTRODUCTION**

On May 1, 2013, plaintiffs KTM NORTH AMERICA, INC. ("KTM NA"), an Ohio Corporation, and KTM-SPORTMOTORCYCLE AG ("KTM AG"), an Austrian Corporation, filed a verified complaint alleging a number of claims against the defendants. (Docket 1). On May 2, 2013, plaintiffs filed an *ex parte* motion, with supporting declarations, for a temporary restraining order ("TRO"). (Dockets 10, 11 & 12). On May 3, 2013, the court entered an order setting a hearing on plaintiffs' motion for a TRO and requiring plaintiffs to serve a copy of the order and all documents filed in this case on defendants or counsel for defendants, if known to plaintiffs. (Docket 16).

On May 7, 2013, the plaintiffs appeared through their attorneys of record, Thomas G. Fritz and Gary K. Brucker, Jr. Defendants did not appear for the hearing, either in person or through counsel. The court considered the plaintiffs' filings, considered the arguments of counsel, and entered an oral order granting plaintiffs' motion for a TRO. The court's oral findings are incorporated into this order.

**CRITERIA FOR ISSUANCE OF A TEMPORARY RESTRAINING ORDER**

Under Fed. R. Civ. P. 65 the court may enter a TRO with or without notice. Fed. R. Civ. P. 65(b)(1). The court chose to require plaintiffs' counsel to give notice to defendants' attorney, if known to plaintiffs' counsel.[1] (Docket 16 at p. 2). A TRO may issue only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition . . . ." Rule 65(b)(1)(A). Once a TRO is entered its duration may "not exceed 14 days . . . unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." Rule 65(b)(2). If a TRO is entered "without notice, the motion for a preliminary injunction must

---

[1]In this case, the court considers this to be an "adversarial," as opposed to *ex parte* hearing, because plaintiffs did give notice to defendants' counsel, Jason M. Sneed of Davidson, North Carolina, by e-mailing copies of the court's order and all pleadings to him. Although defendants chose not to attend the hearing, the court limited the hearing to consideration of plaintiffs' verified complaint, its attachments, and the declarations submitted in support of the motion for a TRO and preliminary injunction. (Dockets 1, 1-1 through 1-9, 11, 11-1 through 11-8, 12, and 12-1 through 12-2).

2

be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character." Rule 65(b)(3). "The court may issue a . . . temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Rule 65(c).

A TRO is an extraordinary remedy and the burden is on the movant to show relief should issue. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citations omitted). The district court has sound discretion to grant or deny such relief. Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 114 n. 8 (8th Cir. 1981) (*en banc*).

Prior to eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006), preliminary injunction actions involving allegations of intellectual property infringement were evaluated differently from other alleged violations of law. In copyright, patent, and trademark cases, the second Dataphase factor, irreparable harm, was presumed once the moving party made a *prima facie* case of infringement. In 2006, the Supreme Court ruled in eBay preliminary injunction actions involving allegations of intellectual property infringement should not be evaluated according to different criteria. Id. at 393. The Supreme Court held no presumption of irreparable harm was warranted simply because a *prima facie* case of infringement could be made. Id. at 393–94. Even

3

though the United States Court of Appeals for the Eighth Circuit has yet to acknowledge eBay's holding with respect to the preliminary injunction factors, other district courts in this circuit have recognized the change.[2] See, e.g., Southeast X-Ray, Inc. v. Spears, No. 2:13-CV-02026, 2013 WL 882437 (W.D. Ark. Mar. 8, 2013); Travel Tags, Inc. v. UV Color, Inc., 690 F. Supp. 2d 785 (D. Minn. 2010); CHS, Inc. v. Petronet, LLC, Civ. No. 10-94 (RHL/FLN), 2010 WL 4721073 (D. Minn. 2010). Accordingly, the court will use the same four-factor Dataphase analysis in evaluating plaintiffs' trademark infringement claims making no presumptions as to irreparable harm.

The four Dataphase factors to be weighed by the court in deciding whether to grant or deny a TRO or preliminary injunctive relief are:

1. The threat of irreparable harm to the movant;

2. The state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant;

3. The probability that movant will succeed on the merits; and

4. The public interest.

Dataphase Systems, Inc., 640 F.2d at 113. In later cases, these factors are identified as the "Dataphase factors."

---

[2] Plaintiffs cite Sturgis Area Chamber of Commerce v. Sturgis Rally & Races, Inc., 99 F. Supp. 2d 1090, 1101 (D.S.D. 2000) for the proposition that in a trademark case "the court may presume irreparable injury . . . ." (Docket 13 at p. 21). After eBay, this presumption is no longer valid.

"[W]hen weighing these factors to determine whether the extraordinary relief of a [TRO] should be granted—no single factor is in itself dispositive." National Wildlife Federation v. Harvey, 440 F. Supp. 2d 940, 958 (E.D. Ark. 2006) (citing Calvin Klein Cosmetics v. Parfums de Coeur, Ltd., 824 F.2d 665, 667 (8th Cir. 1987). "All of the factors must be considered to determine whether the balance weighs towards granting the injunction." National Wildlife Federation, 440 F. Supp. 2d at 958 (citing Dakota Industries, Inc., 988 F.2d 64 (8th Cir. 1993). "In deciding to whether to grant [an] . . . injunction, 'likelihood of success on the merits is the most significant.'" Minnesota Ass'n of Nurse Anesthetists v. Unity Hosp., 59 F.3d 80, 83 (8th Cir. 1995) (citing S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992)). With this legal framework, the court makes the following limited findings from plaintiffs' submission.

## FACTS

Plaintiff KTM NA is a corporation organized and existing under the laws of the state of Ohio. (Docket 1 at ¶ 5). Plaintiff KTM AG is a corporation organized and existing under the laws of the country of Austria. Id. at ¶ 6. KTM NA is the exclusive distributor in the United States of KTM-branded motorcycles and related products manufactured in Austria by KTM AG. Id. at ¶ 1. KTM NA sells these products in the United States through a network of authorized KTM dealerships. Id.

Defendant Cycle Hutt, Inc. ("Cycle Hutt") is a corporation organized under the laws of the state of North Dakota and doing business in the states of North Dakota and South Dakota. Id. at ¶ 7. The principal place of business of Cycle Hutt is currently Sturgis, Meade County, South Dakota. Id. Defendant Sturgis Cycle Hutt, LLC ("Sturgis Cycle Hutt") is a limited liability company organized under the laws of the state of South Dakota. Id. at ¶ 8. The principal place of business of Sturgis Cycle Hutt is currently Sturgis, Meade County, South Dakota. Id. Defendant Dirt Promotions, LLC ("Dirt Promotions") is a limited liability company organized under the laws of the state of South Dakota. Id. at ¶ 9. The principal place of business of Dirt Promotions is currently Sturgis, Meade County, South Dakota. Id. Defendants Justin Bohn and Tammy Bohn, husband and wife, are residents of Sturgis, Meade County, South Dakota. Id. at ¶¶ 2, 10 & 11.

KTM AG develops and manufactures off-road and street motorcycles for racing, as well as related products such as all terrain vehicles ("ATVs"), parts, and accessories ("related products"). Id. at ¶ 17. KTM-branded products are distributed to approximately 1,200 independent dealerships worldwide through a network of international subsidiaries, including KTM NA. Id. KTM NA is the exclusive distributor of KTM-branded motorcycles and related products in the United States. Id. at ¶ 18. KTM NA markets KTM-branded motorcycles and related products to customers in the United States through a network of over

300 authorized KTM dealerships. Id.

KTM AG is the exclusive owner of several trademarks registered with the United States Patent & Trademark Office ("USPTO"). Id. Plaintiffs are the exclusive owners of the following federally registered trademarks:

> KTM (U.S. Trademark Reg. No. 1,664,945);
> KTM POWERWEAR (U.S. Trademark Reg. No. 3,835,412);
> KTM (U.S. Trademark Reg. No. 3,436,150);
> KTM & Design (U.S. Trademark Reg. No. 3,547,084);
> KTM & Design (U.S. Trademark Reg. No. 3,606,168);
> KTM & Design (U.S. Trademark Reg. No. 3,606,165);
> KTM & Design (U.S. Trademark Reg. No. 3,708,763);
> KTM & Design (U.S. Trademark Reg. No 3,606,164);
> KTM (U.S. Trademark Reg. No. 3,440,999);
> KTM X-BOW (U.S. Trademark Reg. No. 3,431,455); and
> KTM (U.S. Trademark Reg. No. 3,398,627).

Id. at ¶ 19 (collectively, "the KTM marks"). The KTM trademark has been continuously used in interstate commerce by plaintiffs in connection with KTM-branded motorcycles and related products since 1978. Id. at ¶ 20.

Cycle Hutt became an authorized KTM dealer in June 2000 pursuant to a dealership agreement with KTM NA. Id. at ¶ 25. In 2003, Cycle Hutt and the Bohns executed an addendum to the dealership agreement regarding KTM NA's intellectual property rights and acknowledged KTM NA owned all rights, title, and interest in KTM NA's trademarks, including the mark KTM. Id. After the addendum to the dealership agreement was executed, Cycle Hutt and the Bohns registered a number of websites containing the KTM mark, including, www.ktm.com. Id. at ¶ 26. Through their online presence, Cycle Hutt and the

Bohns were able to sell KTM-related products at prices substantially below the manufacturer's suggested retail price. Id.

Litigation between the plaintiffs, Cycle Hutt, and the Bohns in the United States District Court, District of North Dakota, was resolved in 2004 through a release and settlement agreement ("settlement agreement"). Id. at ¶ 28 (referencing exhibit 1 (Docket 1-1 at p. 2)). In the settlement agreement the parties agreed, among other things, that:

1. Cycle Hutt and the Bohns agreed to transfer a number of websites, including www.ktm.com and www.ktmmotorcycles.com to KTM NA;

2. Cycle Hutt and the Bohns agreed to not register, purchase, use, or otherwise acquire, directly or indirectly, any domain names incorporating any KTM NA trademarks without the prior written approval of KTM NA;

3. Cycle Hutt was permitted to remain as an authorized KTM dealership through December 7, 2011; and

4. Cycle Hutt and the Bohns were granted a limited license to use ktmhutt.com, ktmhut.com, ktmcyclehutt.com, and cyclehuttktm.com, for the promotion of Cycle Hutt's business, but only so long as Cycle Hutt remained as an authorized KTM dealer.

(Dockets 1 at ¶ 28 & 1-1 at ¶¶ 3(a), (b), (c), & 4).

A 2010 dealership agreement was executed between KTM Cycle Hutt and KTM NA ("dealership agreement"). (Docket 1-3). Justin and Tammy Bohn acknowledged they were 100 percent owners of KTM Cycle Hutt and the officers of the company. Id. at pp. 1, 2 & 17. The dealership agreement contained an

8

acknowledgment KTM NA owned all rights, title, and interest in the KTM mark.

Id. at ¶ 8. The dealership agreement also contained the following provision:

> Upon termination of this Agreement for any reason, Dealer [Cycle Hutt] shall change its corporate name and/or trade name or style of doing business to eliminate reference to or inclusion of "KTM" and shall remove all references to KTM from its letterheads, advertising literature and place of business, and shall not thereafter use any similar or deceptive name or trademark intending to give the impression that there is any relationship between the parties.

Id. at ¶ 9(d). By a notice of termination dated November 1, 2011, KTM NA terminated Cycle Hutt's dealership agreement effective December 7, 2011. (Dockets 1 at ¶ 29 & 1-2).

About the time the Cycle Hutt dealership agreement was terminated, the Bohns relocated to Sturgis, South Dakota. (Docket 1 at ¶ 31). Bohns transferred Cycle Hutt's business operations to defendant Sturgis Cycle Hutt. Id. As recently as April 26, 2013, Sturgis Cycle Hutt was using the internet to sell KTM-related products from Sturgis, South Dakota. (Docket 1-7). The Bohns represented to KTM NA that Bohns' business was in the process of being sold to an unaffiliated authorized KTM dealer, Fun Mart Cycle Center, in Illinois and the sale would be completed in a matter of months. (Docket 1 at ¶ 32). Instead of completing the sale, Bohns continued to operate under the names Sturgis Cycle Hutt, Dirt Promotions, and KTMHUTT.com, d/b/a Sturgis Cycle Hutt and Dirt Promotions. Id. at ¶ 33. As the owners of Dirt Promotions, Bohns continued their registration and use of ktmhutt.com, ktmhut.com,

ktmcyclehutt.com, cyclehuttktm.com, and ktmmotorcycles.com. Id.; see also Docket 1-6. KTMHUTT.com identifies the site as the "#1 Aftermarket KTM Parts Dealer in the USA[.]" (Docket 1-7 at p. 1). The site also invites potential purchasers to "find KTM OEM [original equipment manufacturer] parts . . ." through that webpage. Id. at p. 3; see also Docket 1 at ¶ 34. "KTM-related products and original equipment manufacturer ('OEM') products . . . are only available via KTM NA and its authorized dealerships." (Docket 1 at ¶ 34).

**DISCUSSION**

Plaintiffs' verified complaint asserts the following claims against all of the defendants, jointly and severally:

count 1: breach of dealership agreement;

count 2: breach of guarantee agreement;

count 3: breach of settlement agreement;

count 4: intentional interference with contract;

count 5: federal trademark infringement;

count 6: common law trademark infringement;

count 7: false designation of origin/federal unfair competition;

count 8: common law unfair competition;

count 9: federal trademark dilution;

count 10: common law trademark dilution;

count 11: federal trade dress infringement; and

count 12: Anti-Cybersquatting Consumer Protection Act.

(Docket 1). The court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) as the parties are citizens of different states and the amount in controversy exceeds $75,000. The court also has subject matter jurisdiction pursuant to 15 U.S.C. § 1121(a). The court has pendent jurisdiction over the state law claims alleged pursuant to 28 U.S.C. §1367(a).

Plaintiffs seek a TRO on counts 3-5, 7, and 9-12 of the verified complaint and seek the following remedy:

> prohibiting defendants Justin Bohn, Tammy Bohn, Cycle Hutt, Inc., Sturgis Cycle Hutt LLC, and Dirt Promotions[,] LLC, as well as their officers, shareholders, directors, agents, servants, employees, attorneys, parent companies, confederates, and all persons in active concert, conspiring with, and/or participating with them from, directly or indirectly, engaging in the following activities: (1) registering, purchasing, using, or otherwise acquiring any internet domain names which incorporate any of Plaintiffs' trademarks, including but not limited to KTM, and including but not limited to ktmcyclehutt.com, cyclehuttktm.com, ktmhutt.com, ktmhut.com, and ktmmotorcycles.com; (2) purchasing or otherwise acquiring any KTM motorcycles or related products from any authorized KTM dealerships; and (3) continuing to engage in any and all acts of trademark infringement and unfair competition as described in the Verified Complaint, until such time as the Court renders a decision on Plaintiffs' Motion for Preliminary Injunction.

(Docket 10 at p. 2).

The court finds it most helpful in its analysis to evaluate the <u>Dataphase</u> factors in the following order.

1. **THE PROBABILITY THE PLAINTIFFS WILL SUCCEED ON THE MERITS**

The court ordinarily is not required at an early stage to draw the fine line between a mathematical probability and a substantial possibility of success.

11

This endeavor may be necessary in some circumstances when the balance of equities requires a more careful evaluation of the merits. But where the balance of other factors tips decidedly toward plaintiffs, a TRO may issue if plaintiffs have raised questions so serious and difficult as to call for a more deliberate investigation. This is commonly referred to as the "better chance of prevailing test" of success standard. Dataphase, 640 F.2d at 113.

First, the court finds plaintiffs have demonstrated they are likely to succeed against defendants Cycle Hutt, Justin Bohn, and Tammy Bohn for breach of the terms of the settlement agreement as alleged in count 3 and against all defendants for intentional interference of contract as alleged in count 4 of the verified complaint. By its very terms, the settlement agreement is governed by Ohio law. (Docket 1-1 at ¶ 12). Under Ohio law a breach of contract claim is proved by evidence of: "(1) the terms of the contract, (2) the performance by the plaintiff of his obligations, (3) the breach by the defendant, (4) damages, and (5) consideration." American Sales, Inc. v. Boffo, 593 N.E.2d 316, 321 (Ohio App. 1991). Without repeating the facts to support those elements, the court finds plaintiffs are likely to prevail on the breach of the settlement agreement claim.

Similarly, the facts support count 4 that defendants are intentionally interfering with the dealership agreements with plaintiffs' authorized dealerships. Defendants are not an authorized dealership and have no authority to purchase KTM-related products from KTM dealers for resale.

Doing so without the permission of plaintiffs would constitute interference with those contracts. The court finds plaintiffs are likely to prevail on the intentional interference with contract claim.

Second, the court finds plaintiffs have demonstrated it is likely they will prevail against defendants for violating plaintiffs' trademarks as alleged in counts 5, 7, and 9-12 of the verified complaint. Defendants' use of the websites ktmhutt.com, ktmhut.com, ktmcyclehutt.com, cyclehuttktm and ktmmotorcycles.com to sell KTM-related products "creates a likelihood of confusion, deception, or mistake among an appreciable number of ordinary buyers" of KTM-related products "as to the source of or association between" plaintiffs' KTM registered marks and the marks of the defendants. Sturgis Area Chamber of Commerce, 99 F. Supp. 2d at 1096.

The facts show as a prior KTM dealership, defendants Cycle Hutt and the Bohns know the purpose, strength and distinctiveness of plaintiffs' trademarks. Plaintiffs, their authorized dealerships, and the defendants are all using the KTM mark in connection with marketing and selling KTM-branded products to the public. Because of the similarity between plaintiffs' marks and defendants' marks, it is very likely consumer confusion will occur. For purposes of analysis under Dataphase, the court finds plaintiffs have met their burden of proof required to show probable success on the merits of their trademark claims.

## 2. PLAINTIFFS ARE REQUIRED TO SHOW THE THREAT OF IRREPARABLE HARM

It is well-established that a party is entitled to equitable relief only if there is no adequate remedy at law. Morales v. Trans World Airlines, Inc., 504 U.S. 374, 381 (1992). The court should view the irreparable-harm factor as weighing against the issuance of a TRO if there is an adequate remedy at law. The harm that has already occurred can be remedied through damages. Adam-Mellang v. Apartment Search, Inc., 96 F.3d 297, 300 (8th Cir.1996) (finding preliminary injunctive relief unavailable where a plaintiff had "an adequate remedy at law, namely, the damages and other relief to which she will be entitled if she prevails"). "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999) (quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 (1959)).

"The likelihood of confusion is a factual question . . . ." First National Bank in Sioux Falls v. First National Bank South Dakota, 679 F.3d 763, 769 (8th Cir. 2012) (referencing Georgia–Pac. Consumer Products LP v. Myers Supply, Inc., 621 F.3d 771, 775 (8th Cir.2010)). "If there are two permissible views of the evidence, 'the fact-finder's choice between them cannot be clearly erroneous.'" Id. (quoting Georgia-Pac Consumer Products LP, 621 F.3d at 775) (quoting Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985)). "[A] trademark plaintiff need not show actual confusion in order to prevail." Id. at

14

769. "[T]here are at least three evidentiary routes to prove a likelihood of confusion—survey evidence, evidence of actual confusion, and/or argument based on an inference arising from a judicial comparison of the conflicting marks themselves and the context of their use in the marketplace." Id. (citing Heartland Bank v. Heartland Home Finance, Inc., 335 F.3d 810, 821 (8th Cir. 2003)).

In First National Bank in Sioux Falls, the district court "found that a key element of its initial choice of remedy, the mandatory use of a disclaimer, would be insufficient to alleviate the confusion." Id. at 769-70. "[T]he likelihood of confusion made actionable by the Lanham Act 'include[s] confusion of nonpurchasers as well as direct purchasers.'" Id. at 770 (citing Insty*Bit, Inc. v. Poly-Tech Indus., Inc., 95 F.3d 663, 672 (8th Cir. 1996)). Evidence of customer confusion "can be sufficient by itself to establish a likelihood of confusion." Id. In a TRO or preliminary injunction hearing, the trial court may make a credibility determination. Id. (citing Fed. R. Civ. P. 52(a)(6)).

The court finds the likelihood of confusion exists. Because of plaintiffs' inability to control defendants' business practices, "the quality of defendants' services constitutes an immediate and irreparable injury, regardless of the actual quality of those services." Sturgis Area Chamber of Commerce, 99 F. Supp. 2d at 1101.

15

A Google search of KTM reflects potential KTM customers are deflected to defendants' website cyclehutt.com. (Docket 1-9). Quantifying damages to plaintiffs' reputation and the reputations of their authorized dealers is difficult, if not impossible, to calculate. There is no adequate remedy at law to compensate for the harm caused to plaintiffs by customer complaints relating to defendants' business practices in the handling of plaintiffs' KTM-related products. (Docket 11-7). The effect on potential future purchase decisions by of KTM-related products because of plaintiffs' inability to control defendants' non-dealership related conduct cannot be quantified. Similarly, the same realty would undermine the reputation of KTM's authorized dealerships.

The court finds there is no adequate remedy at law to compensate plaintiffs for the irreparable harm caused by the loss of plaintiffs' commercial reputation. The court finds this factor weighs in favor of plaintiffs.

3. **THE STATE OF BALANCE BETWEEN THIS HARM AND THE INJURY THAT GRANTING THE INJUNCTION WILL INFLICT ON DEFENDANTS**

"[T]he balance of harm analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and upon other interested parties, including the public." Uncle B's Bakery, Inc. V. O'Rourke, 920 F. Supp. 1405, 1436 (N.D. Iowa 1996) (citing Dataphase Systems, Inc., 640 F.2d at 114).

Plaintiffs are not seeking to put defendants out of business by enjoining their use of the KTM mark. (Docket 13 at p. 22). Rather, all plaintiffs seek to

16

enjoin is defendants' use of the KTM mark and the use of "KTM" in any website domain name. Id. While a TRO may well restrict defendants' business, prohibiting their use of the KTM mark and "KTM" in any website domain name will not necessarily put defendants out of business. There is no harm to defendants by enjoining their unlawful use of plaintiffs' trademarks. The court recognizes there is a vast market for motorcycles, accessories, and clothing available to defendants without violating plaintiffs' legal rights.

The court finds this factor weighs in favor of plaintiffs.

**4.    THE PUBLIC INTEREST**

"[O]nce the likelihood of confusion is shown, it follows that the public interest is damaged if such confusion continues." Sturgis Area Chamber of Commerce, 99 F. Supp. 2d at 1102 (citing J. Thomas McCarthy, 5 McCarthy on Trademarks and Unfair Competition, § 30.52 (4th Ed. 1997)). It is in the public's interest to prevent unlawful trademark infringement and to avoid deceit or confusion in the market place. Id.

The court finds this factor favors plaintiffs.

**BOND**

Under Rule 65(c), no TRO or preliminary injunction shall issue except upon the giving of security by the applicant, in a sum as the court deems proper, for the payment of costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. A bond is mandatory for the issuance of either a TRO or preliminary injunction.

17

Rathmann-Group v. Tanenbaum, 889 F.2d 787 (8th Cir. 1989). The amount of the bond is left to the discretion of the district court. Id. at 789. The court finds a bond in the sum of $5,000 will provide an adequate surety to defendants for attorneys' fees and other associated costs in seeking to quash an improperly issued TRO.

**ORDER**

For good cause shown, it is hereby

ORDERED that plaintiffs' motion for a temporary restraining order (Docket 9) is granted.

IT IS FURTHER ORDERED that defendants CYCLE HUTT, INC., STURGIS CYCLE HUTT, LLC, DIRT PROMOTIONS, LLC, JUSTIN BOHN; and TAMMY BOHN are hereby temporarily and immediately restrained from engaging in the following activities:

1. Registering, purchasing, using, or otherwise acquiring any internet domain names which incorporate any of Plaintiffs' trademarks, including but not limited to KTM, and including but not limited to ktmcyclehutt.com, cyclehuttktm.com, ktmhutt.com, ktmhut.com, and ktmmotorcycles.com; and

2. Purchasing or otherwise acquiring for resale purposes any KTM motorcycles or related products from any authorized KTM dealerships.

IT IS FURTHER ORDERED that this temporary restraining order is binding upon defendants' officers, agents, servants, employees, attorneys, and upon those persons in active concert or participation with them who receive actual notice of this order.

18

IT IS FURTHER ORDERED that this temporary restraining order shall remain in full force and effect for fourteen (14) days, unless before the expiration of the fourteen (14) days, the court, for good cause, extends the temporary restraining order for a like period or defendants consent to a longer extension.

IT IS FURTHER ORDERED that plaintiffs shall post, within forty-eight (48) hours, a bond in the sum of $5,000, in compliance with Rule 65(c) of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that on or before **5 p.m. (MDT) on Thursday, May 16, 2013**, defendants shall show cause, if any they have, why the court should not enter a preliminary injunction and permanent injunction under Fed. R. Civ. P. 65(a)(2).

Dated May 8, 2013, at 1:15 p.m.

BY THE COURT:

JEFFREY L. VIKEN
CHIEF JUDGE